IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | CR 13-1978-TUC-CKJ (LAB) |
| Plaintiff, | **REPORT AND RECOMMENDATION** |
| vs. | |
| Andrew Scott Livingston, Teresa Lynn Schnabel, | |
| Defendants. | |

The District Court referred this case to the Magistrate Judge for a hearing on the defendants' motion to suppress. The defendants, Andrew Scott Livingston and Teresa Lynn Schnabel, argue in the motion to suppress that there was a warrantless search and seizure of their vehicle and that the government has the burden to prove that the search and seizure were permissible pursuant to the Fourth Amendment. (Doc. 33). Defendant Schnabel filed a motion for joinder in Defendant Livingston's motion. (Doc. 34).

An evidentiary hearing was held on April 11, 2014. United States Border Patrol (USBP) Agent Ewan Cordice testified. Government's Exhibits 1, 2, and 3 were admitted.

**Charge:**

Defendants Livingston and Schnabel are charged by indictment with conspiracy to possess with intent to distribute 50 kilograms or more of marijuana and possession with intent to distribute 50 kilograms or more of marijuana, in violation of Title 21 United States Code §§ 841(a)(1) and 841(b)(1)(C). (Doc. 12).

1   **Motion to Suppress:**

2     The defendants argued at the evidentiary hearing that the search and seizure of their

3   vehicle was in violation of the Fourth Amendment because the detention was prolonged,

4   without articulable suspicion, beyond the time necessary to determine that the defendants are

5   United States citizens. Defendant Schnabel argued that Defendant Livingston's consent to

6   search the trunk of the vehicle was not voluntary.  Defendant Livingston did not join in that

7   argument.  The government responded that Schnabel does not have standing to raise the

8   voluntariness of Livingston's consent.  The issue was not briefed.  The defendants move to

9   suppress all statements and evidence obtained as a result of the vehicle stop as the fruit of the

10  unlawful seizure.

11    The Court concludes that the stop at primary inspection was legal and that articulable or

12  minimal suspicion was established prior to the vehicle's referral to secondary inspection.

13  The search of the vehicle was based on valid consent by the driver. The evidence should not

14  be suppressed and is admissible at trial.

15  **EVIDENCE:**

16  *Ewan Cordice*

17    Ewan Cordice testified that he has been a U.S.B.P. Agent for 5 1/2 years.  On

18  10/18/13 he was working the shift from midnight until 8 a.m. at the checkpoint on State

19  Route 83, checking immigration status and looking for drug and alien smugglers.

20  Cordice is familiar with the traffic patterns for his shift, which he has been working for one

21  year.  Traffic is slow until about 5:00 a.m. to 8:00 a.m. when people start going to work.

22  Cordice recognizes most Sonoita residents and about 70% to 80% of the vehicles.  On his

23  shift, about 100 vehicles pass through the checkpoint and he generally refers one or two of

24  those to secondary inspection. On weekdays the traffic is mostly locals. On weekends others

25  drive in the area to get to recreation sites.

26    On 10/18/13 the canine officer left the checkpoint at about 7:45 a.m. The agents are more

27  vigilant when the dog is absent because smugglers send scouts to see if the dog is there.  It's

28  easier to pass people and contraband through the checkpoint when the dog is gone.  At about

1   8:00 a.m., Hector Sanchez, a known scout for drug and alien smugglers, passed through the

2   checkpoint heading north. Sanchez regularly passes through the checkpoint.  He is usually

3   unfriendly but did not have his normal bad attitude on 10/18/13.  He was leaning forward and

4   looking around, specifically toward the trailer where the agents usually take their breaks.

5       A couple of local vehicles drove through the checkpoint after Sanchez  and then a Toyota

6   Avalon with two occupants came through.  It was the first unfamiliar vehicle after Sanchez.

7   Agent Cordice identified Defendant Livingston as the driver. Cordice first noticed a bar code

8   on the windshield, which in Cordice's experience meant that the car was a rental.  Cordice

9   did not recognize the driver.  He walked around the car to check the license plate and saw

10  that it started with "CH", indicating that it was some type of official or commercial vehicle.

11  As Cordice spoke with the occupants he noted that they were dressed very casually, not as

12  if they were going to work, although he does not know what type of work they are engaged

13  in. Livingston was wearing a white jacket, unzipped, with bright colors and jeans.  Schnabel

14  was wearing black capris pants.  The vehicle was a high-end model Toyota and the clothing

15  was not consistent with the vehicle.  The driver's face looked nervous and his left hand was

16  shaking.  Cordice never asked any immigration questions.

17      Agent Cordice asked  Livingston where they were coming from.  Livingston responded

18  "Sonoita", which Cordice thought was odd because there is nothing to do there.  When

19  Cordice asked Livingston why they had been in Sonoita, Livingston froze and did not

20  respond.  Livingston said the car was a rental vehicle but he could not produce the rental

21  agreement.  Cordice asked if he could look in the trunk and Livingston said no because that

22  would make him late to work.  Cordice sent Livingston to secondary inspection.  Livingston

23  hesitated so Cordice repeated his command.  He did not take the car keys, but he did ask

24  Livingston to turn off the motor.

25      Cordice testified that he knew almost right away that he would refer the car to secondary

26  inspection because the driver was nervous, his hands were shaking, he avoided eye contact

27  and he was unsure of his responses.  Cordice also became suspicious when the driver

28  wouldn't let him look in the trunk.   There was nothing in the car in plain view that was

1    suspicious.

2    Agent Cordice told Livingston that if he was in a hurry to get to work he should open the

3    trunk to avoid further delay.  Livingston fumbled around and pushed the button in the car to

4    open the trunk.  An agent saw bundles of marijuana.  Livingston was asked to get out of the

5    car and the defendants were arrested.  Less than 10 minutes passed from the time the car

6    approached the checkpoint until the defendants were arrested.  Livingston started to say

7    something about not going to work that day.  Cordice stopped him and read him his rights.

8    Defendant Schnabel was also advised of her rights.

9    After the arrest, U.S.B.P. Agent Knight, a canine handler, asked if he could have his dog

10   sniff the vehicle for training purposes.  The dog alerted.

11   **DISCUSSION:**

12   The defendants argue that since Agent Cordice had no concerns about their immigration

13   status, any delay at primary inspection was in violation of the Fourth Amendment.  They

14   assert that there was no articulable suspicion to justify the referral to secondary inspection.

15   "The Fourth Amendment prohibits 'unreasonable searches and seizures' by the

16   Government, and its protections extend to brief investigatory stops of persons or vehicles that

17   fall short of traditional arrest."  *U.S. v. Arvizu*, 534 U.S. 266, 273 (2002) (citing *Terry v.*

18   *Ohio*, 392 1, 9 (1968); *U.S. v. Cortez*, 449 U.S. 411, 417 (1981).

19   A vehicle that is stopped at an immigration checkpoint is seized for Fourth Amendment

20   purposes.  *U.S. v. Martinez-Fuerte*, 428 U.S. 543, 556 (1976).   The seizure is only

21   constitutional if it is "limited to a few brief questions about immigration, the production of

22   immigration documents, and a 'visual inspection of the vehicle...limited to what can be seen

23   without a search.'"  *U.S. v. Preciado-Robles*, 964 F.2d 882, 884 (9th Cir. 1992)(quoting

24   *Martinez-Fuerte*, 428 U.S. at 558).  Detention at the checkpoint may be prolonged beyond

25   the time necessary for an immigration inspection if there is "articulable suspicion or a

26   minimal showing of suspicion of criminal activity."  *U.S. v. Taylor*, 934 F.2d 218, 220-21

27   (9th Cir. 1991).  That standard is lower than reasonable suspicion.  *Id.*

28   Articulable suspicion has been found at a Border Patrol checkpoint based on suspicious

- 4 -

1   answers and nervous conduct.  *U.S. v. Segundo-Orellana*, 541 Fed.Appx. 751, 754 (9th Cir.

2   2013).  The Court in *U.S. v. Taylor*, 934 F.2d 218, 221 (9th Cir. 1991) found that when a

3   defendant at a Border Patrol checkpoint "became increasingly nervous and uneasy" there was

4   minimal, articulable suspicion to justify a brief further delay.   A vehicle can be sent to

5   secondary inspection based on a minimal showing of suspicion.  *U.S. v. Thomas*, 726 F.3d

6   1086, 1095 (9th Cir. 2013).

7       The defendants met their burden to show that Agent Cordice's referral to secondary

8   inspection was not for immigration purposes.  The burden then shifts to the Government to

9   demonstrate that Cordice had an articulable suspicion that the defendants were engaged in

10  criminal activity, prior to referring them to secondary. See *Taylor*, 934 F.2d at 221; see also

11  *U.S. v. Wilson*, 7 F.3d 828, 834 (9th Cir. 1993).  The Court finds that the Government has met

12  its burden.

13      Agent Cordice testified that shortly after Hector Sanchez, a known drug and alien

14  smuggling scout, drove through the checkpoint, the defendants approached the checkpoint,

15  during shift change, when the drug detection dog was not present.  The defendants were the

16  first unfamiliar vehicle, with occupants that the agent did not recognize, to approach the

17  checkpoint after Sanchez drove through.   Defendant Livingston, the driver,   was

18  uncommonly nervous. His left hand was shaking.  The vehicle appeared to be a rental car

19  with a commercial license plate.  Livingston said the car was rented but he could not produce

20  the rental agreement.  Livingston said he and the passenger, Defendant Schnabel, were

21  coming from Sonoita, which the agent thought was odd because there is nothing to do there

22  and it was a weekday when the traffic generally consists of locals, known to the agent, going

23  to work.  When Agent Cordice asked Livingston why he was in Sonoita, Livingston froze

24  and did not answer. Agent Cordice asked for consent to look in the trunk, which Livingston

25  denied. Agent Cordice sent the vehicle to secondary inspection.  The Government concedes

26  that there is no strong evidence that the investigation was related to immigration.

27      Based on all the factors he observed, and on his experience, Agent Cordice suspected that

28  the defendants were involved in criminal activity.  The vehicle was detained beyond the time

1   necessary to conduct the immigration inspection.

2   **CONCLUSION:**

3   The Court finds that the brief detention and questioning at primary inspection was justified

4   and resulted in an articulable suspicion or a minimal showing of suspicion that the defendants

5   were engaged in criminal activity.   That suspicion supported the decision to send the

6   defendants to secondary inspection where Defendant Livingston, almost immediately, gave

7   consent to search the trunk.  Once the trunk was open and the contraband was discovered

8   there was probable cause to arrest both defendants. The detention of the vehicle from the

9   time it approached primary inspection at the checkpoint until the defendants were arrested

10   was not unduly prolonged, lasting less than 10 minutes.

11   **RECOMMENDATION:**

12   In view of the foregoing, it is recommended that, after its independent review of the

13   record, the District Court **DENY** the motion to suppress (Docs. 33). Evidence acquired as

14   a result of the search and seizure of the vehicle should not be suppressed.

15   Pursuant to 28 U.S.C. § 636(b)(1)(B), defense counsel may serve and file written

16   objections to these findings and recommendations with the District Court within 14 days.

17   Thereafter, the parties have ten (10) days within which to file a response to the objections.

18   If objections are not timely filed, the party's right to de novo review may be waived.  No

19   replies shall be filed unless leave is granted from the District Court.

20   DATED this 17th day of April, 2014.

21

22   _Leslie A. Bowman_

23   Leslie A. Bowman

24   United States Magistrate Judge

25

26

27

28

- 6 -